UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JERRY E. TUGGLE,

                Petitioner,

v.                                  Case No. 3:12-cv-21-J-34MCR

FLORIDA PAROLE COMMISSION,
et al.,

                Respondents.

_____

**<u>ORDER</u>**

## **<u>I. Status</u>**

Petitioner Jerry E. Tuggle, an inmate of the Florida penal system, initiated this action on January 6, 2012, by filing a pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under 28 U.S.C. § 2254. In the Petition, Tuggle challenges a 2010 revocation of conditional release supervision. Respondents have submitted a memorandum in opposition to the Petition. <u>See</u> Florida Parole Commission's Answer to Court's Order to Show Cause (Response; Doc.9) with exhibits (Resp. Ex.). On February 2, 2012, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. 6), admonishing Tuggle regarding his obligations and giving Tuggle a time frame in which to submit a reply. Tuggle submitted a brief in

reply. See Reply to Florida Parole Commission's Answer to Order to Show Cause (Reply; Doc. 11). This case is ripe for review.

## II. Procedural History

In September 1989, in Case No. 89-1032, the trial court adjudicated Tuggle guilty and sentenced him to a term of imprisonment of ten years for battery of a law enforcement officer, a term of imprisonment of thirty years for possession of cocaine with intent to sell or deliver, and a term of imprisonment of ten years for evidence tampering, with all such terms to run concurrently with one another.[1] Resp. Ex. A. When Tuggle reached his tentative release date on March 26, 2008, the Florida Parole Commission released him from imprisonment on conditional release supervision. Resp. Ex. B. On May 8, 2009, Correctional Probation Senior Officer Benningfield submitted a violation report to the Florida Parole Commission asserting that Tuggle violated the terms of his supervision by using or possessing cocaine and marijuana. Resp. Ex. C, State of Florida Department of Corrections Violation Report. Benningfield described how the violation occurred:

> The subject has violated Condition (7) of his Conditional Release, by failing to live and remain at liberty without violating any law by committing the criminal offense of: Count 1 - Possession of Cocaine with Intent, and Count II - Possession of Marijuana with Intent, on May 14, 2009, in Marion County, Florida, and

---

[1] On March 8, 1995, the court corrected Tuggle's sentence so that his sentences would run concurrently with each other. See Resp. Ex. A at 10-11.

as grounds for belief that the offender
violated his Conditional Release Supervision,
Officer M.G. Benningfield states that the
offender was arrested on May 14, 2009, for the
said offense by PFC B. Sirolli, of the Ocala
Police Department.

According to arrest affidavit #2009-00077735,
by the [P]FC B. Sirolli, that on May 14, 2009,
he observed [that] a 1987 Chevy pickup truck
went west bound [sic] on SW 7th Place, in
Ocala, Florida, with the windshield tint, that
extended below, the AS/1 line. [U]pon making a
traffic stop and writing a warning ticket for
the violation[,] [h]e requested a K-9, Officer
to do a walk around of the vehicle. The dog
alerted on the driver door. A search of the
vehicle revealed a purple crown royal bag
between the driver's side and center console,
in plain sight of the subject. Inside the bag,
six (6) separate small plastic bags,
containing what appeared to be Marijuana, also
discovered [sic] a plastic sandwich bag
containing several smaller plastic bags
containing white powder substance [sic]
appeared to be Cocaine. A field test of both
substances resulted in positive results tests
for Marijuana and Cocaine.

Id. at 4. The Florida Parole Commission issued a warrant for

Tuggle's arrest on May 18, 2009. Id. at 2, Warrant for Retaking

Conditional Releasee.

On December 18, 2009, the Florida Parole Commission held a

conditional release violation hearing, at which Tuggle was

represented by counsel (Mr. Andrew Pozzuto). According to the

Florida Parole Commission's Summary of Final Violation Hearing

(Hearing Summary; Resp. Ex. D), several witnesses testified. The

summary reflects that Officer Brandon Sirolli (the arresting

officer with the Ocala Police Department) testified as follows:

3

After being duly sworn Officer Sirolli testified that while he was patrolling the area of the 2200 block of SW 7th Place, Ocala at approximately 8:00 a.m., he observed releasee driving a 1987 Chevy truck with front window tinting not in compliance with Florida law and executed a stop. While writing a Written Warning[,] he requested that K-9 Officer Gerard King respond to evaluate the truck for narcotics. Officer Sirolli said that the area where the stop took place had been determined to be a high crime, high narcotics area which prompted his request. When Officer King arrived[,] his dog, Kilo, alerted to both the driver and passenger sides of the truck. Releasee was ordered out of the truck and Officer Sirolli conducted a search. He located a purple Crown Royal bag between the driver's seat and center console in clear view of the releasee. Inside the bag were six separate clear plastic bags containing what appeared to be marijuana. The officer then discovered a plastic sandwich bag that held several smaller clear plastic bags in which was what appeared to be powder cocaine. Both substances were field tested and proved positive as described. The consistency of the packaging of the suspected narcotics led the officer to believe the applicant intended to distribute the narcotics.

During his continued search of the truck[,] Officer Sirolli found a small clear plastic bag in the center console inside of which was a small blue pill crushed into small pieces. The releasee identified it as Viagra which was his for personal use. The officer produced all the illegal substance[s] found as well as the bags. He then submitted a copy of an FDLE [(Florida Department of Law Enforcement)] laboratory report which confirmed the cocaine with a weight of 3.3 grams. The attorney for the releasee accepted the evidence without examination.

While at the jail[,] releasee said to the officer that he knew who the drugs belonged to, but he wanted to talk to a drug agent and

4

> have his charges altered. The officer said his
> charges would not be altered and the
> conversation ended.
>
> Questioning by Attorney Pozzuto: Officer
> Sirolli had the plastic bags examined for
> finger prints, but no usable prints were
> revealed. Officer Sirolli read releasee his
> Miranda rights. Mr. Tuggle made no further
> statements after he volunteered his ownership
> of the Viagra pill at the scene of his arrest.

Id. at 6 (emphasis and indentation deleted). According to the

Hearing Summary, Officer Gerard King (the K-9 Officer) testified as

follows:

> After being duly sworn[,] Officer King said
> that he was at the police station when he
> received Officer Sirolli's request to do a
> drug search of releasee's truck. The dog
> alerted to both sides of the truck. Officer
> King stood by while the search was conducted
> and watched releasee. He did not watch the
> actual search. Officer Sirolli described what
> he had found to Officer King. He did not see
> the recovered narcotics. He does not recall
> releasee making any statements.
>
> Attorney Puzzuto had no questions for the
> witness.

Id. at 7. The hearing officer summarized the testimony of Annie

Keys (Tuggle's mother, the owner of the Chevy truck):

> After being duly sworn[,] Ms. Keys said she
> was the owner of the Chevy truck. (This fact
> was confirmed by DAVID.)[2] Everyone drives her
> truck[:] her nephew, her son, his fiancee. She
> knows nothing about any drugs. Someone else
> drove the truck the day before. The releasee
> took it to go to work between 6:30 and 7:00
> that morning.

---

[2] DAVID is the driver and vehicle information database.

Id. Geneva Palmer (Tuggle's fiancee) testified that six to seven different people drive the truck. Id. According to the Hearing Summary, Tuggle testified on his own behalf as follows:

> After being duly sworn[,] [Tuggle] said that he borrowed his mother's truck to drive to Krystal for some breakfast on the way to work. He usually gets a ride from Andre Green or from his fiancee. He didn't say anything to the officer at the jail. The officer came to him and asked him if he would like to work out a deal. He told the officer that he didn't know anything.

> Since he got out of prison last year he has been trying to do right, trying to stay employed. He has paid his money and had no dirty urines. He was going to the Krystal not selling drugs. He never saw the bag.

Id. Tuggle's counsel summarized the case.

> [I]t has been established that between 6 and 7 people use the truck belonging to Ms. Keys. It is not normal for someone borrowing a car to examine its interior. The drugs could have belonged to anyone. The judge suppressed the evidence and the State filed a nolle prosequi as a result. With this weak a case how can the Commission send this man back to prison for over 11 years?

Id. at 7-8. Counsel submitted two exhibits for the hearing officer's consideration: the court's order granting Tuggle's motion to suppress,[3] and the court's announcement of nolle prosequi of the criminal charges (Case No. 2009-1998-CF-A-Z, possession of cocaine

---

[3] See Resp. Ex. D at 17, Case No. 2009-1998-CF-A-Z, Order Granting the Defendant's Motion to Suppress (stating that the Defendant's Motion to Suppress is granted and "any and all illegal narcotics found in the vehicle Mr. Tuggle was driving on May 14, 2009 is suppressed[]").

with intent to sell or deliver and possession of cannabis with intent to sell) based on suppression of narcotics found in the vehicle.[4] <u>Id</u>. at 6. The hearing examiner found Tuggle guilty of willfully violating substantial conditions of supervision and recommended that the Commission revoke his supervision. <u>Id</u>. at 4, 8-9. On February 2, 2010, the Commission accepted the hearing examiner's factual findings and revoked Tuggle's supervision. Resp. Ex. E, Revocation of Conditional Release Order. In its order, the Commission found that Tuggle willfully violated substantial conditions of his conditional release as follows:

> **Violated Condition 4(b)** by using or possessing narcotics, drugs or marijuana, unless prescribed by a physician, in that on or about May 14, 2009, **he did use and/or possess cocaine**, not prescribed by a physician.

> **Violated Condition 4(b)** by using or possessing narcotics, drugs or marijuana, unless prescribed by a physician, in that on or about May 14, 2009, **he did use and/or possess marijuana**, not prescribed by a physician.

> **Violated Condition 7** by failing to obey all laws, ordinances or statutory conditions of Conditional Release, in that on or about May 14, 2009, in Marion County, Florida, **he did unlawfully possess/constructively possess cocaine, a controlled substance, with intent to sell.**

> **Violated Condition 7** by failing to obey all laws, ordinances or statutory conditions of Conditional Release, in that on or about May 14, 2009, in Marion County, Florida, **he did**

---

[4] <u>See</u> Resp. Ex. D at 18, Nolle Prosequi.

> **unlawfully    possess/constructively    possess
> marijuana, a controlled substance, with intent
> to sell.**

Id. at 1-2 (emphasis added). In doing so, the Commission set forth

the evidence that it relied upon in making its decision. Id. at 2.

On December 20, 2010, Tuggle filed a pro se petition for writ

of habeas corpus.[5] In the petition, Tuggle asserted that the

Commission improperly and illegally revoked his conditional release

because the evidence was insufficient to support a finding of a

willful violation. Resp. Ex. F. The circuit court denied the

petition on March 31, 2011. Resp. Ex. G. On April 19, 2011, Tuggle

filed a petition for writ of certiorari. The appellate court denied

the petition for writ of certiorari per curiam on the merits on

September 30, 2011, see Tuggle v. Fla. Parole Comm'n, 75 So.3d 727

(Fla. 1st DCA 2011); Resp. Ex. H, and later denied Tuggle's motion

for rehearing on November 30, 2011, see id. The mandate issued on

December 16, 2011. Id.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year

limitations period. See 28 U.S.C. § 2244(d); Response at 6.

---

[5] See Richardson v. Fla. Parole Comm'n, 924 So.2d 908, 910
(Fla. 1st DCA 2006) (stating that a petitioner may appeal the
Florida Parole Commission's final action by filing a petition for
writ of habeas corpus in a state circuit court, and may seek review
of the circuit court's denial of the petition for writ of habeas
corpus by filing a petition for writ of certiorari in the
appropriate Florida district court of appeal within thirty days).

## IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Tuggle's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

9

> determined by the Supreme Court of
> the United States; or
>
> (2) resulted in a decision that
> was based on an unreasonable
> determination of the facts in light
> of the evidence presented in the
> State court proceeding.

Thus, 28 U.S.C. § 2254(d) "bars religation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S.Ct. 770, 784 (2011). As the United States Supreme Court stated, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S.Ct. 10, 16 (2013). This standard of review is described as follows:

> Under AEDPA, when the state court has
> adjudicated the petitioner's claim on the
> merits, a federal court may not grant habeas
> relief unless the state court's decision was
> "contrary to, or involved an unreasonable
> application of, clearly established Federal
> law, as determined by the Supreme Court of the
> United States," 28 U.S.C. § 2254(d)(1), or
> "was based on an unreasonable determination of
> the facts in light of the evidence presented
> in the State court proceeding," id. §
> 2254(d)(2). "Under § 2254(d)(1)'s 'contrary
> to' clause, we grant relief only 'if the state
> court arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question
> of law or if the state court decides a case
> differently than [the Supreme Court] has on a
> set of materially indistinguishable facts.'"
> Jones v. GDCP Warden, 753 F.3d 1171, 1182
> (11th Cir. 2014) (quoting Williams v. Taylor,
> 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d
> 389 (2000)). "Under § 2254(d)(1)'s
> 'unreasonable application' clause, we grant

relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413, 120 S.Ct. 1495).

For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court – not Supreme Court dicta, nor the opinions of this Court. White v. Woodall,-U.S. –, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014). To clear the § 2254(d) hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011). "[A]n 'unreasonable application of' [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." Woodall, 134 S.Ct. at 1702 (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). A state court need not cite or even be aware of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); accord Richter, 131 S.Ct. at 784.

"AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) (citations and internal quotation marks omitted). And when a claim implicates both AEDPA and Strickland, our review is doubly deferential. Richter, 131 S.Ct. at 788 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (citations and internal quotation marks omitted)). [A petitioner] must

> establish that no fairminded jurist would have
> reached the Florida court's conclusion. <u>See
> Richter</u>, 131 S.Ct. at 786-87; <u>Holsey v.
> Warden, Ga. Diagnostic Prison</u>, 694 F.3d 1230,
> 1257-58 (11th Cir. 2012). "If this standard is
> difficult to meet, that is because it was
> meant to be." <u>Richter</u>, 131 S.Ct. at 786....

<u>Taylor v. Sec'y, Fla. Dep't of Corr.</u>, 760 F.3d 1284, 1293-94 (11th

Cir. 2014); <u>see also</u> <u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1230

(11th Cir. 2014).

Finally, for a state court's resolution of a claim to be an

adjudication on the merits, so that the state court's determination

will be entitled to deference for purposes of federal habeas corpus

review under AEDPA, all that is required is a rejection of the

claim on the merits, not an opinion that explains the state court's

rationale for such a ruling. <u>Hittson</u>, 759 F.3d at 1232 ("[T]here is

no AEDPA requirement that a state court explain its reasons for

rejecting a claim[.]"); <u>Richter</u>, 131 S.Ct. at 785 (holding that §

2254(d) does not require a state court to give reasons before its

decision can be deemed to have been adjudicated on the merits);

<u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th

Cir. 2002). Thus, to the extent that Tuggle's claims were

adjudicated on the merits in the state courts, they must be

evaluated under § 2254(d).

## VI. Findings of Fact and Conclusions of Law

Tuggle asserts that the Commission's revocation of his

conditional release violated his due process rights because the

12

revocation was not supported by sufficient evidence. He also states
that the Commission relied upon evidence obtained in violation of
the Fourth Amendment. Tuggle raised these claims in his state
petition for writ of habeas corpus, and the circuit court
ultimately denied the petition, stating in pertinent part:

> Petitioner seeks review of the revocation
> of his conditional release. Petitioner was
> found by the hearing officer and the Parole
> Commission to have violated his conditions of
> release by illegally possessing marijuana and
> cocaine, both of which were found in the truck
> Petitioner was driving. Petitioner argues that
> he is entitled to release because the hearing
> officer's finding that Petitioner willfully
> violated his conditional release was not based
> on competent and substantial evidence.
> Specifically, Petitioner contends that there
> is no evidence showing that he knew of the
> presence of the illegal substances in the
> truck, which the record shows he borrowed and
> did not own. Petitioner requests immediate
> reinstatement back to conditional release.
>
> An order to show cause was issued, and
> the Court has considered the Respondent's
> response as well as Petitioner's reply thereto
> and all appendices submitted.
>
> This Court's standard of review on an
> appeal from a parole revocation decision of
> the Florida Parole Commission is provided by
> Sheley v. Florida Parole Commission, 703 So.2d
> 1202 (Fla. 1st DCA 1997). Sheley notes that a
> petition to the circuit court is "the accepted
> remedy for the review of a Parole Commission
> order." Id. at 1205 (citing Griffith v. Fla.
> Parole & Probation Comm'n, 485 So.2d 818 (Fla.
> 1986)). Analogizing to the rules that govern
> appellate review of local administrative
> actions, the Sheley court explained that
> review initiated by a petition to the circuit
> court is "like a plenary appeal on the
> merits." Id. at 1206 (citing Cherokee Crushed

13

Stone v. City of Miramar, 421 So.2d 684 (Fla. 4th DCA 1982)). Hence, in reviewing a final order of the Parole Commission, this Court follows the same standard that it follows when reviewing local administrative decisions. That is, this Court must determine whether or not the FPC: (1) provided procedural due process; (2) observed the essential requirements of law; and (3) supported its findings by substantial competent evidence. City of Deerfield Beach v. Vaillant, 399 So.2d 1045, 1046 (Fla. 4th DCA 1981). In this case Petitioner only challenges whether the evidence was competent and substantial to support the hearing examiner's findings, which were adopted by the Parole Commission.

The FPC may only revoke parole if the parolee willfully violated a substantial condition of his parole. Mathis v. Fla. Parole Comm'n, 944 So.2d 1182, 1183 (Fla. 1st DCA 2006). This willfulness finding is factual in nature. Id. It must be made by the hearing officer and supported by competent and substantial evidence. Id. "[T]he hearing officer must make enough factual findings in his recommendation to allow the Parole Commission and the [reviewing] court to determine whether the violation was 'willful.'" Williams v. Fla. Parole Comm'n, 949 So. 2d 1180, 1181 (Fla. 1st DCA 2007).

The record indicates that Petitioner was given a hearing at which he was represented by counsel, gave his own testimony, presented evidence, and was permitted to present and cross-examine witnesses. The hearing summary shows that a law enforcement officer testified that he stopped Petitioner due to suspicion of illegal window tint on the truck Petitioner was driving, that the officer called for a K-9 unit to evaluate the truck for narcotics, and that the dog alerted on the truck. The officer went on to testify that bags of marijuana were found in a purple crown royal bag between the driver's seat and center console, that the crown royal bag had been in clear view of the Petitioner, that Petitioner was the sole

14

occupant of the vehicle, and that Petitioner, while in jail after the drugs were found, told the officer that Petitioner knew to whom the drugs belonged.[6]

Based on the officer's testimony, the hearing officer found that the Petitioner's violation of parole in this case was willful and substantial. The Parole Commission adopted the hearing officer's findings and maintained that the revocation of conditional release was appropriate.

Competent and substantial evidence consists of "evidence in the record that supports a reasonable foundation for the conclusion reached." See Dep't of Highway Safety and Motor Vehicles v. Trimble, 821 So.2d 1084, 1087 (Fla. 1st DCA 2002). Petitioner contends that the evidence in this case is insufficient to support the hearing officer's finding because the hearing officer cannot permissibly infer Petitioner's knowledge of the presence of drugs in the vehicle Petitioner borrowed.

Petitioner argues that it was impermissible for the fact finder to infer Petitioner's knowledge of the drugs since violations of probation must be willful. Petitioner asserts that this willfulness requirement distinguishes probation violations from the violations of the criminal statutes, and he argues in effect that he is being convicted of a felony on strict liability. His argument lacks merit. Criminal possession statutes require, at least according to Florida Courts, guilty knowledge as an element. Garcia v. State, 901 So.2d 788, 793 (Fla. 2005)[7] ("When read together, Medlin,

---

[6] See Resp. Ex. D at 6.

[7] See Nash v. State, 951 So.2d 1003, 1005 n.1 (Fla. 4th DCA 2007) ("The precise holding of Garcia is limited to cases tried before the effective date [(May 13, 2002)] of section 893.101, Florida Statutes."); see Garcia v. State, 901 So.2d 788, 793, n.2

Chicone, and Scott stand for the proposition that "guilty knowledge" is an element of the offense of possession and must be proven beyond a reasonable doubt. The guilty knowledge element includes knowledge of both the presence of, and the illicit nature of, the substance possessed, and the jury should be instructed on both."). Petitioner cannot successfully argue that a "willfulness" requirement distinguishes release violations and makes sole occupant inferences inapplicable in the context of conditional release revocation.[8]

Even in criminal cases, inferring a suspect's knowledge of the presence of contraband is permitted and can support a finding of guilt when drugs are present in a vehicle that is solely occupied by the suspect. State v. Odom, 862 So.2d 56, 59 (Fla. 2d DCA 2003) (permitting inference or presumption of "knowledge of the presence of contraband and its illicit nature" when suspect was in exclusive possession of the automobile, which was a rental vehicle co-leased by his sister, when it was stopped and found to contain contraband in an opaque container between the driver's seat and center console). Also, since proof of knowledge is required by the statute, the crime is, at least from a legal standpoint, not a strict liability offense. The hearing officer

---

(Fla. 2005) ("Because of the statutory changes made by the Legislature, this decision is limited to cases tried prior to the effective date of the statute and pending on direct appeal."); Quaintance v. State, 845 So.2d 294 (Fla. 1st DCA 2003) ("For any offense occurring prior to May 13, 2002, an essential element of the crime of possession of an illegal substance was knowledge of the illicit nature of the substance.").

[8] See State v. Odom, 862 So.2d 56, 59 (Fla. 2nd DCA 2003) ("As the sole occupant and driver of the vehicle, Odom had exclusive possession of the vehicle creating an inference of his dominion and control over the contraband contained therein particularly since the contraband was found lodged between the driver's seat and the console of the car.").

permissibly concluded that Petitioner willfully possessed the contraband.

The record reflects an adequate basis for a finding by preponderance of the evidence that Petitioner willfully and substantially violated the conditions of his release. The officer's testimony and the presence of the cocaine and marijuana provide competent and substantial evidence that supports the fact finder's conclusion that Petitioner violated his conditions of release. This Court is not permitted to substitute its judgment for that of the fact-finder and accordingly declines to disturb the Commission's findings in this case.

Resp. Ex. G at 2-6 (emphasis added). The appellate court denied Tuggle's petition for writ of certiorari on the merits, and later denied his motion for rehearing. Tuggle, 75 So.3d 727.

Assuming there are qualifying state court decisions, the Court considers these claims in accordance with the deferential standard for federal court review of state court adjudications. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of these claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Tuggle is not entitled to relief on the basis of these claims.

Moreover, even assuming the state courts' adjudications of these claims are not entitled to deference, Tuggle's claims are

without merit. The record fully supports the circuit court's conclusions. The revocation hearing summary shows that competent and substantial evidence existed to support the hearing examiner's factual findings that Tuggle was guilty of all four violations and that the violations were willful and substantial. See Glumb v. Honsted, 891 F.2d 872, 873-74 (11th Cir. 1990) (stating the hearing summary provides a sufficient record for review; "We know of no federal decision requiring a verbatim transcript of parole revocation proceedings.").

Tuggle asserts that the Florida Parole Commission's revocation of conditional release violated his due process rights because the evidence presented at the revocation hearing "was constitutionally inadequate to support revocation under the preponderance of the evidence standard." Petition at 12. Tuggle argues that the Commission's findings and the circuit court's decision were contrary to clearly established federal law announced in Morrissey v. Brewer, 408 U.S. 471 (1972), involved an unreasonable application of clearly established federal law, and were based on an unreasonable determination of the facts in light of the evidence presented. See Petition at 12. The United States Supreme Court, in Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973), held that the revocation of probation implicates certain minimal due process protections under the Fourteenth Amendment. Id.; see also Morrissey v. Brewer, 408 U.S. 471 (1972) (holding that minimal due process

protections are required during revocation of parole proceedings).

The minimum requirements of due process include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body such as a traditional parole board ...; and (f) a written statement by the factfinders as to the evidence relied on and the reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in any adversary criminal trial.

Morrissey, 408 U.S. at 489 (quotations omitted); Gagnon, 411 U.S. at 786.

Consistent with Gagnon and Morrissey, the Eleventh Circuit has stated:

> A probationer charged with violating a term of his probation is not entitled to the same procedural protections afforded the accused in a criminal trial. See Gagnon, 411 U.S. at 782, 93 S.Ct. at 1759-60; Morrissey, 408 U.S. at 480, 92 S.Ct. at 2600. Because a "[p]robation revocation ... is not a stage of a criminal prosecution," Gagnon, 411 U.S. at 782, 93 S.Ct. at 1759-60, a probationer is afforded the minimum requirements of due process, which entitles him to disclosure of the evidence against him and a hearing at which he can present evidence and "confront and cross-examine witnesses (unless the hearing officer specifically finds good cause

for not allowing confrontation)," Morrissey,
408 U.S. at 489, 92 S.Ct. at 2604. That
hearing must be "structured to assure that the
finding of a ... violation will be based on
verified facts and that the exercise of
discretion will be informed by an accurate
knowledge of the [probationer's] behavior,"
id. at 484, 92 S.Ct. at 2602, and should
involve a "process ... flexible enough to
consider evidence including letters,
affidavits, and other material that would not
be admissible in an adversary criminal trial,"
id. at 489, 92 S.Ct. at 2604. See Gagnon, 411
U.S. at 783 n.5, 93 S.Ct. at 1760 n.5 ("[W]e
emphasize that we did not in Morrissey intend
to prohibit use where appropriate of the
conventional substitutes, including
affidavits, depositions, and documentary
evidence.").

    The Florida courts decided that
[petitioner]'s revocation hearing afforded him
due process, and that decision is not contrary
to or an unreasonable application of clearly
established federal law. Because the hearing
to revoke [petitioner]'s probation was "not
part of a criminal prosecution," he was not
entitled to "the full panoply of rights"....
See Morrissey, 408 U.S. at 480, 92 S.Ct. at
2600.

Silimon v. Sec'y, Fla. Dep't of Corr., 554 F. App'x 838, 841 (11th

Cir. 2014). In the instant action, the hearing examiner's findings

were based on competent and substantial evidence,[9] and Tuggle was

afforded the due process protections set forth in Morrissey.

Additionally, Tuggle's arguments based on Shelton v. Sec'y, Dep't

of Corr., 802 F.Supp.2d 1289 (M.D. Fla. 2011), are unconvincing.

---

    [9] See Jacques v. State, 95 So.3d 419, 420 n.1 (Fla. 3rd DCA
2012) (stating that a new criminal offense can constitute a
probation violation even if the State nolle prossed the charges);
State v. Jenkins, 762 So.2d 535 (Fla. 4th DCA 2000).

See <u>Shelton v. Sec'y, Dep't of Corr.</u>, 691 F.3d 1348 (11th Cir. 2012) (reversing the district court's decision that Florida's drug statute is unconstitutional for failing to provide a <u>mens</u> <u>rea</u> element; holding that the district court's failure to accord deference to the state court decision violated AEDPA), <u>cert</u>. <u>denied</u>, 133 S.Ct. 1856 (2013).

Additionally, Tuggle asserts that "those authorities holding the exclusionary rule to not apply in parole revocation proceedings were wrongly decided and should be receded from." Petition at 12 n.1. He argues:

> Petitioner additionally continues to maintain his additional claim that the Commission should not have been permitted to rely upon evidence obtained pursuant to an illegal search and seizure in violation of the Fourth Amendment. Again, Petitioner acknowledges this claim to currently be untenable under the present state of the law. See: <u>Pennsylvania Board of Probation and Parole v. Scott</u>, 524 U.S. 357, 364 (1998). However, **Petitioner argues that the decision in <u>Scott</u> should be revisited and receded from.**

Reply at 16 n.2 (emphasis added). In <u>Scott</u>, the United States Supreme Court held that the exclusionary rule does not apply in parole revocation hearings. <u>Pa. Bd. of Prob. & Parole v. Scott</u>, 524 U.S. 357, 364 (1998) (explaining that, while courts generally exclude material gathered in violation of the Fourth Amendment, the exclusionary rule does not apply in state parole revocation hearings to exclude evidence obtained in violation of the Fourth Amendment); <u>see</u> <u>Henderson v. Davis</u>, 467 F. App'x 829, 830 (11th

Cir. 2012) (per curiam) ("While the information gathered during the search served as the basis for the revocation of his conditional release, that evidence was admissible at the revocation hearing regardless of the constitutionality of the search due to the inapplicability of the exclusionary rule to conditional release revocation hearings.") (citing <u>Scott</u>, 524 U.S. at 364). For these reasons, Tuggle's claims do not warrant federal habeas relief. <u>See</u> Response at 8-14.

## VII. Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Tuggle seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Tuggle "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Tuggle appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of January, 2015.


MARCIA MORALES HOWARD
United States District Judge


sc 1/6
c:
Jerry E. Tuggle
Counsel of Record

24